Daniel P. Collins (State Bar Id No. 009055)
Alysse M. Medina (State Bar Id No. 027278)
COLLINS, MAY, POTENZA, BARAN & GILLESPIE, P.C.
201 North Central Avenue, 22nd Floor
Phoenix, Arizona 85004-0608
Telephone: (602) 252-1900
Facsimile: (602) 252-1114
Email: dcollins@cmpbglaw.com
Email: amedina@cmpbglaw.com

Attorneys for Debtor-in-Possession,
Texas Hill Enterprises, GP and Texas
Hill Diamante Cooling, L.L.C.

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>TEXAS HILL ENTERPRISES, GP, an Arizona general partnership,<br><br>Debtor.<br><br>In re:<br><br>TEXAS HILL DIAMANTE COOLING, L.L.C an Arizona limited liability company<br><br>Debtor | Chapter 11<br><br>Case No. 0:10-bk-11121-JMM<br>Case No. 0:10-bk-11126-JMM<br>(Motion for Joint Administration Pending)<br><br>**EMERGENCY MOTION OF THE DEBTORS FOR INTERIM ORDER TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363**<br><br>**Hearing Date and Time: TBA** |

Pursuant to 11 U.S.C. § 363 of the Bankruptcy Code, Texas Hill Enterprises, GP, an Arizona general partnership ("THE") and Texas Hill Diamante Cooling, L.L.C., an Arizona limited liability company ("THDC") (collectively "Texas Hill" or "Debtors"), on an emergency basis, pursuant to §§ 105(a), 361, and 363, of the United States Bankruptcy Code herewith seek this Court's Interim Order authorizing Texas Hill to use certain cash and cash equivalents (the "Cash") in which various entities have claimed or may claim an interest in to pay essential postpetition operating expenses and for certain emergency expenses whenever incurred.

1

This Motion seeks relief from the Court for Debtors to use the Cash to pay vendors, salaries, wages, professionals, and all other expenses necessary to the operation of their businesses. The relief sought is essential to facilitate the ongoing operations of the Debtors. Since denial of such relief could essentially force the Debtors into proceedings under Chapter 7, extraordinary circumstances exist that justify the relief sought.

This Motion is supported by the following Memorandum of Points and Authorities and the entire record before the Court.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

2. This Motion is brought pursuant to 11 U.S.C. §§ 105, 361 and 363 and Rule 4001-3, Fed.R.Bankr.Proc.

## PROCEDURAL BACKGROUND

3. On April 15, 2010 (the "Petition Date"), THE and THDC filed voluntary petitions for reorganization relief under Chapter 11 of Title 11 of the United States Bankruptcy Code.

4. On April 15, 2010 the Debtors filed a Motion for Joint Administration, which is still pending before the Court.

5. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to 1107(a) and 1108 of the Bankruptcy Code.

6. The Debtors own and operate the Texas Hill Farm, an agricultural business spanning 5,200 acres in Yuma County, Arizona. Approximately 3,999 acres of the farm are leased by the Debtors. The balance of the land is titled to these estates. In addition to their farming operations, THDC owns a state of the art produce cooler, which is not presently operating.

7. The Texas Hill Farm grows various crops including but not limited to alfalfa, lettuce, cantaloupe, hay, rye, wheat, Sudan seed, Bermuda seed, and cotton.

8. Upon information and belief, Farm Credit Services Southwest ("Farm Credit") may claim liens on the Debtors' real estate, equipment and Cash in the approximate amount of $5,021,546.00. The Debtors' proposed counsel has not had sufficient time to determine the validity, priority, enforceability, and/or extent of those claimed liens. In addition, a formal creditors committee is yet to be formed.

## **LEGAL ARGUMENT**

The Debtors propose to use Farm Credit's purported cash collateral, specifically crops, crop proceeds, cash, deposit accounts, inventory, accounts receivables, etc., to allow them to continue their business operations during the course of this reorganization.

Pursuant to 11 U.S.C. 363(c)(2), the Bankruptcy Code permits the use of cash collateral only upon consent of the party claiming an interest in the cash collateral or with court authority after a notice and a hearing. Section 363(e) conditions the use of cash collateral on the debtor providing adequate protection of the interest at stake. Where adequate protection is required, it must protect a secured entity against any use of collateral that results in a decrease in the value of such entity's interest in such collateral. *See United Savs. Ass'n Timbers of In-wood Forest Ass'n Ltd.*, 44 U.S. 365, 369-73, 108 S.Ct. 626 (1988). The Debtor is willing to grant Farm Credit post-petition replacement liens in such cash collateral as adequate protection. Pursuant to 11 U.S.C. § 361, adequate protection may be provided by a replacement lien. *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1450 (9th Cir. 1985); *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Beeker Industries Corp.*, 58 B.R. 725, Bankr.S.D.N.Y. 1986). Granting replacement liens on new crops, inventory or accounts generated by the Debtors' use of the cash collateral is a common method of providing adequate protection. *In re Wrecclesham Grange*, Inc., 221 B.R. 978, 981 (Bankr.N.D. Florida, 1997); *In re Barkley AAA Investors, Ltd.*, 175 B.R. 755 (Bankr.D.Kansas 1994). By granting Farm Credit replacement

liens, the Debtors will provide adequate protection of Farm Credit's claimed security interests to authorize the use of Farm Credit's cash collateral in accordance with the requirements of the Bankruptcy Code.

Farm Credit is further adequately protected by the Debtors' continuation and preservation of the going concern value of the business. *See In re Erie Hilton Joint Venture*, 125 B.R. 140, 149 (Bank.W.D.Pa. 1991) ("Preservation of the going-concern value of the business can constitute a benefit to the secured creditor"); *In re Princeton Square Assocs.*, 201 B.R. 90, 96 (Bank.S.D.N.Y. 1996) ("this court concludes that no monetary protection is required to be provided by the debtor in possession to the secured creditor to the extent that the rents are applied for the maintenance of the property in the manner a receiver would apply the rents.").

Adequate protection is also provided to Farm Credit by the equity cushion in the hard assets of the Debtors (i.e. Farm Credit's land and equipment collateral). *See in re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984); *In re Patrician St. Joseph Ltd. Partnership*, 169 B.R. 669, 676 (D.Ariz. 1994). The Debtors assert that their debts, including debts to Farm Credit, total approximately $13.5 million. The alleged secured claims of Farm Credit and Rabobank, N.A. and Rabobank AgFinance total only approximately $11 million. (The two Rabobank entities are secured by first and second liens against the Debtors' real property). The Debtors further contend that these estates hold assets valued at approximately $18.9 million. A summary of the Debtors' assets and debts, with estimated values per the Debtors' business judgment, is attached hereto and incorporated by this reference as Exhibit "A". These secured creditors are collectively protected by an equity cushion of approximately 35%. That cushion will only increase as profits are realized and cash is generated from the Debtors' farming operations

Although Farm Credit may object to the Debtors' use of the Cash, Debtors contend Farm Credit's interests are significantly protected by allowing the Debtors to continue to operate the Farm and to protect and preserve the value of their assets.

## PROPOSED RELIEF

The Debtors must be permitted to use the cash collateral to pay essential post-petition operating expenses, including payroll and lease expenses that are imminently pending. The Debtors have attached to this Motion as Exhibit "B" a proposed budget ("Budget"), which is incorporated by this reference. The Budget provides a window into the Debtors' operations, expenses, and expected income for a period of three months. The Farm will operate profitably and increase the going-concern value of the Farm if the Debtors are permitted to use the cash collateral. Absent authority to pay these essential post-petition operating expenses, the Debtors will be unable to maintain essential services necessary to continue operating post-petition. If the Debtors are forced to completely cease their operations, valuable estate assets will be placed at substantial risk and the estates will suffer irreparable harm. Moreover, the Debtors will lose the opportunity to successfully reorganize and to maintain their going concern value. See the Declaration of Barbara Braden attached hereto as Exhibit "C".

## CONCLUSION

Wherefore, based on the foregoing, the Debtors respectfully request the Court enter an Order:

A. Granting this Emergency Motion on an interim basis as provided in the form of Interim Order attached hereto as Exhibit "D";

B. Approving the Debtors' use of cash as described herein and in accordance with the Budget;

C. Setting a final hearing on the Motion as soon as possible fifteen (15) days after the date of the filing of the Motion; and

D. Granting such additional and further relief as is necessary and appropriate under the circumstances of this case.

\ \ \

Respectfully submitted,
COLLINS, MAY, POTENZA, BARAN & GILLESPIE, P.C.

By /s/ Daniel P. Collins                    009055
   Daniel P. Collins
   Alysse M. Medina
   Attorneys for Debtor-in-Possession,
   Texas Hill Enterprises, GP and Texas
   Hill Diamante Cooling, L.L.C.

Copy of the foregoing
mailed this 16th day
of April, 2010 to:

United States Trustee
230 North First Avenue, Suite 204
Phoenix, Arizona 85003-1706

Rabobank, N.A.
c/o Michael Fox
Special Assets Management, 95
P.O. Box 6002
Arroyo Grande, California 93420

Rabobank Ag
c/o Ken Vandegraaff
4445 E. Holmes Ave., Suite 105
Mesa, Arizona 85206

Farm Credit Services Southwest
c/o Ron Kinner, VP/Branch Manager
2490 South 5th Avenue
Yuma, Arizona 85364

Edward Zachary, Esq.
Kyle Hirsch, Esq.
Bryan Cave, LLP
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
Attorneys for Rabobank, N.A.

/s/ Denine Bower

| Assets | | Estimated Value |
|---|---|---|
| 560 Acres Irrigated Land | | 5,600,000 |
| 960 Acres | | 1,440,000 |
| Crops in Ground | | 2,800,000 |
| Farming Facilities | | 1,600,000 |
| Equipment | | 2,000,000 |
| Residence | | 350,000 |
| Cooler | | 5,200,000 |
| | **TOTAL** | 18,990,000 |

| Liabilities | | |
|---|---|---|
| Farm Credit | | 5,021,546 |
| RaboAg | | 2,114,493 |
| Rabo NA | | 3,962,000 |
| Desert Hills Bank | | 708,581 |
| A/P | | 1,700,000 |
| | **TOTAL** | 13,506,620 |

**EXHIBIT A**

# Texas Hill Enterprises
Budget: 4/19/10 to 7/15/10

| Sources of Cash | 04/19 | 04/26 | 05/03 | 05/10 | 05/17 | 05/24 | 05/31 | 06/07 | 06/14 | 06/21 | 06/28 | 07/05 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Custom work | | | 19,500 | | | | | | | | | |
| Cottonseed | | | | 3,000 | 18,000 | | | 18,000 | | | | |
| Produce sales | 30,000 | 35,000 | | | | | | | | | | |
| Canteloupe Sales | | | | | | | | | | | | |
| Wheat sales | | | | | | | | | | | 75,000 | |
| Lease Payments | | | | | | | | | | | 1,300,000 | 116,400 |
| Alfalfa sold | | 12,265 | | | | | | | | | | |
| Alfalfa Inventory | | | | | 34,500 | 34,500 | 201,000 | | | | 240,000 | |
| sudan 09 inv. | | | | | | 30,000 | | | | | | |
| bailer/disc | 13,000 | | | | | | | | | | | |
| FAB loan | 150,000 | | | | | | | | | | | |
| Bank Balance* | 97,040 | | | | | | | | | | | |
| | 127,040 | 210,265 | 19,500 | 3,000 | 52,500 | 34,500 | 231,000 | 0 | 18,000 | 0 | 1,615,000 | 116,400 |

*source: loans from principals

| Expenses: | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Payroll | 17,000 | 23,200 | 17,000 | 17,000 | 23,200 | 17,000 | 23,200 | 17,000 | 23,200 | 17,000 | 23,200 | |
| Payroll Fed/state | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 |
| Health Insur | | | | | 7,000 | 7,000 | | | 7,000 | | | |
| WMIID: electrical | | 6,600 | | | | 6,600 | | | 6,600 | | | |
| Bulk fuel | | | 15,730 | | | | | | | | | |
| Chemicals | 7315 | 10115 | 57,000 | | | | 18,335 | | | 18,335 | | |
| WMIID: water | | | | | | | | 197,400 | | | | |
| RE taxes | | | 51,295 | | | | | | | | | |
| miscellaneous/OH | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| | 33,815 | 56,415 | 150,525 | 32,700 | 26,500 | 46,300 | 44,835 | 230,100 | 26,500 | 46,300 | 44,835 | 32,700 |

| Running balance | 93,225 | 247,075 | 116,050 | 86,350 | 112,350 | 100,550 | 286,715 | 56,615 | 48,115 | 1,815 | 1,571,980 | 1,655,680 |

EXHIBIT B

Daniel P. Collins (State Bar Id No. 009055)
Alysse M. Medina (State Bar Id No. 027278)
**COLLINS, MAY, POTENZA, BARAN & GILLESPIE, P.C.**
201 North Central Avenue, 22nd Floor
Phoenix, Arizona 85004-0608
Telephone: (602) 252-1900
Facsimile: (602) 252-1114
Email: dcollins@cmpbglaw.com
Email: amedina@cmpbglaw.com

Attorneys for Debtor-in-Possession,
Texas Hill Enterprises, GP and Texas
Hill Diamante Cooling, L.L.C.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: <br><br> TEXAS HILL ENTERPRISES, GP, an Arizona general partnership, <br><br> Debtor. <br><br> In re: <br><br> TEXAS HILL DIAMANTE COOLING, L.L.C an Arizona limited liability company <br><br> Debtor. | Chapter 11 <br><br> Case No. 0:10-bk-11121-JMM <br> Case No. 0:10-bk-11126-JMM <br><br> (Joint Administration Motion Pending) <br><br><br> **DECLARATION OF <br> BARBARA BRADEN <br> IN SUPPORT OF <br> FIRST DAY MOTIONS** |

BARBARA BRADEN, under penalty of perjury, states:

1. I am over the age of eighteen (18), and am of sound mind.

2. I am the trustee of the Barbara Braden Revocable Trust, the managing member of Texas Hill Diamante Cooling, L.L.C., an Arizona limited liability company ("THDC") and the managing partner of Texas Hill Enterprises, GP, an Arizona general partnership ("THE") (collectively "Texas Hill" or "Debtors") the debtors-in-possession in the above-captioned

**EXHIBIT C**

chapter 11 case (this "Case"). I am familiar with Texas Hill's general business and financial affairs. I submit this declaration based on personal knowledge in connection with the Debtors' voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, filed on April 15, 2010 (the "Petition Date"). The Debtors continue in possession of their property and the management of their business as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3. I am familiar with the day-to-day operations, business affairs, and books and records of the Debtors.

4. To enable the Debtors to operate more effectively and avoid the adverse effects of its Chapter 11 filings, the Debtors have requested various types of relief in "first day" motions filed with the Court concurrently herewith.

5. I submit this declaration (the "Declaration") in support of the Debtors' first-day motions and the voluntary petitions filed under Chapter 11.

6. Any capitalized term not expressly defined herein shall have the meaning ascribed to that term in the relevant first day motion.

7. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, or my opinion based upon my experience and knowledge of the Debtors' operations and financial conditions. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this Declaration.

8. The statements set forth below are true to the best of my personal knowledge and if called to testify to those statements, I would do so competently.

## DESCRIPTION OF THE DEBTOR

9. On the Petition Date, THE and THDC filed their voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the

2

"Bankruptcy Code"), which cases are pending before the United States Bankruptcy Court for the District of Arizona (the "Court").

10. THE, is an Arizona general partnership and THDC is an Arizona limited liability company. THE and THDC, collectively referred to as Texas Hill, together own and operate Texas Hill Farm ("Farm") in Yuma County, Arizona.

11. Texas Hill Farm is a family owned farm that is situated on approximately 5,200 acres of farm land located in Yuma County, Arizona.

12. The Farm is relatively isolated, on the eastern edge of the Wellton-Mohawk Valley, sixty (60) miles from Yuma. The Farm is spread over a belt of land that is approximately seventeen (17) miles long.

13. Approximately 3,990 acres of the 5,200 acres are currently leased by Texas Hill from other parties. The farm grows various crops, including but not limited to alfalfa, lettuce, hay, rye, wheat, cantaloupe, Bermuda seed, Sudan seed, and cotton. The farm produces for a large variety of clients which vary from small local companies to major national corporations located throughout the United States.

14. The Farm itself employees at least 35 individuals and the acreage outside of crop producing land, includes the Farm's office and employee housing. The Farm also houses THDC's major asset, the state of the art produce cooling facility, and an airstrip complete with hanger.

15. As an originally family run farm, the Farm started to experience difficulty when an outside management team and individual were hired to run the Farms operations. After a series of bad investments and contributions to personal unwarranted expenses, the Farm found itself in serious debt unable to maintain the expense of day to day operations and the large secured creditor loans.

16. The Debtors currently have three large secured creditors, Farm Credit Services Southwest, Rabobank AgFinance, and Rabobank N.A. (collectively "Secured Creditors") each is

3

owed the approximate amounts of $5,021,546, $2,100,000, and $3,962,000 respectively. The Secured Creditors are secured by the land, fixtures, and crops. More specifically, RaboBank N.A. is secured by the Farms cooling facility and its surrounding land, Rabobank AgFinance. is secured by the land and fixtures, and Farm Credit Services Southwest has an asserted lien on the land, fixtures, and crops.

17. The Debtors currently have debt in the aggregate amount of $13.5 million. The Debtors collectively have current assets in the aggregate amount of $18.5 million. There is a large amount of equity in the Farm and the Farm will be able to operate and move forward profitably, paying its creditors in full, over time.

## MOTION FOR JOINT ADMINISTRATION

16. The Debtors have filed a motion for the joint administration of their estates. The Debtors have numerous joint financial obligations, mainly that of the Secured Creditors.

17. The Debtors intend to engage in negotiations with the Secured Creditors in an attempt to resolve all pending issues so that the plans proposed by the Debtors are acceptable to the Secured Creditors to streamline the process of confirmation of the plans.

18. Bankruptcy Rule 1015(b) authorizes joint administration when two or more petitions are pending by or against a debtor and an affiliate. 11 U.S.C. § 101(2) defines the term "affiliate" as an entity that operates the business or substantially all of the property of the debtor under a lease or operating agreement. Texas Hill Enterprises and Texas Hill Diamante collectively operate the Texas Hill Farm.

## EMERGENCY MOTION OF THE DEBTORS FOR INTERIM ORDER TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363

19. The Debtors have filed an Emergency Motion of the Debtors for Interim Order to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 ("Cash Collateral Motion"). The Debtors

propose to use the Secured Creditors purported cash collateral, specifically crops, crop proceeds, cash, deposit accounts, inventory, accounts receivables, etc., to allow them to continue their business operations during the course of this reorganization.

20. The Debtors are willing to grant the Secured Creditors post-petition replacement liens in such cash collateral as adequate protection. By granting the Secured Creditors replacement liens, the Debtors will provide adequate protection of the Secured Creditors' claimed security interests to authorize the use of the Secured Creditors' cash collateral in accordance with the requirements of the Bankruptcy Code. The Secured Creditors are further adequately protected by the Debtors' continuation and preservation of the going concern value of the business. Adequate protection is also provided to the Secured Creditors by the equity cushion in the hard assets of the Debtors (i.e. the land and equipment).

21. The Debtors assert that their total debt including that of the Secured Creditors is approximately $13.5 million. However, the Debtors assert that the estates hold assets in the approximate amount of $18.9 million. Further, the Debtors believe that Rabo Bank and Rabo Ag will consent to the Debtors' use of cash collateral in order to enable the Debtors to continue to operate the Farm. The Secured Creditors interests are only furthered and protected by allowing the Debtors to continue to operate the Farm and to protect and preserve the value of their assets.

22. The Debtors must be permitted to use the cash collateral in order to pay essential post-petition operating expenses, including payroll and lease expenses that are imminently pending. A copy of the Debtors proposed budget ("Budget") is attached to the Cash Collateral Motion. The Budget provides a window into the farms operations, expenses, and expected income for a period of three months. The farm will continue to operate profitably, maintain and increase the going-concern value of the farm if the Debtors are permitted to use the cash collateral. Absent the ability to pay these essential post-petition operating expenses, the Debtors will be unable to maintain essential services necessary to continue operating post-petition. If the

Debtors are forced to completely cease its operations, valuable estate assets will be placed at substantial risk and the estates will suffer irreparable harm. Moreover, the Debtors will lose the opportunity to successfully reorganize and to maintain their going concern value.

## DEBTORS' MOTION TO OBTAIN CREDIT PURSUANT TO 11 U.S.C. § 364

23. The Debtors have filed a Motion to Obtain Credit Pursuant to 11 U.S.C. § 364 ("Post-Petition Financing Motion").

24. The Debtors have certain lease agreements, chemical and fertilizer, and payroll expenses which require immediate payment ("Expenses"). If the Expenses are not paid timely the Farm will default on the lease agreement losing the leased land, the crop, and any proceeds from the crop subject to the lease agreement. Further, if the Expenses are not paid the Farm will subject the land and crops to irreparable harm. At present, the current monthly revenues generated by the Debtor cannot cover the Expenses.

25. The Debtors have received an offer from Ms. Ricard to open a $200,000 line of credit for THE to mature on July 15, 2010. Interest will accrue at a rate of 10% per annum. In exchange for the extension of credit Ms. Ricard shall be granted an administrative priority pursuant to 11 U.S.C.§§ 364 and 503(b)(1) and given a super-priority lien on all existing crops pursuant to 11 U.S.C. § 364(d)(1)(B).

26. The Debtors also have received an offer from Mr. Braden to lend THE $150,000, which loan is to be repaid by July 15, 2010. Interest will accrue at a rate of 10% per annum. In exchange, for the loan Mr. Braden shall be granted an administrative priority pursuant to 11 U.S.C. §§ 364 and 503(b)(1).

27. In this case, the Debtors have found interested lenders willing to provide post-petition financing in the aggregate amount of $350,000 to the Debtors in exchange for priority as an administrative expense, in the case of Ms. Richard, and for a super-priority lien on the Debtors' existing crops. The Debtors, given their current credit status are unable to obtain

unsecured lending, or even locate interested parties willing to lend the Debtors monies sufficient to pay the Expenses on terms as favorable as the proposed post-petition financing.

28. Post-petition financing is necessary for the continued operation of the Debtors' estates and the estates' successful reorganization. Furthermore, the creditors of the bankruptcy estate will benefit from the Court's approval of the post-petition lending, because the Debtors will be able to meet the Expenses, allowing the continued benefit of the use of the land and its' crops.

29. The Debtors seek an entry of the Interim Order on an emergency basis and request that the Court set a "final hearing" in accordance with Bankruptcy Rule 4001(c). Bankruptcy Rule 4001(c) authorizes the Court to enter the Interim Order authorizing the Debtors' to obtain post-petition financing.

## DEBTORS' APPLICATION TO EMPLOY GENERAL COUNSEL

37. The Debtors seek the employment of the law firm Collins, May, Potenza, Baran & Gillespie, P.C. ("CMPBG") as general counsel for the Debtors to assist in the analysis of the Debtors' financial situation, render legal advice to the Debtors in determining the course of action necessary to reorganize effectively; prepare and file the petition, statement of affairs, schedule of assets and liabilities, and plan of reorganization which may be required; represent the Debtors at the first meeting of creditors and confirmation hearing, and any adjourned hearings thereof; represent the Debtors in any and all adversary and/or contested matters and other court proceedings; assist in negotiations with the Debtors' creditors and other parties-in-interest; preparation of pleadings and documents related to, among other things, real estate leases and sales of assets; and other representation as necessary. The Debtors believe CMPBG

///

to be experienced in matters of this character and well qualified to represent the Debtors and assert that CMPBG meets all of the employment requirements applicable in this case.

Under penalty of perjury, I declare the foregoing to be true and accurate to the best of my knowledge.

_____
Barbra Braden

Daniel P. Collins (State Bar Id No. 009055)
Alysse M. Medina (State Bar Id No. 027278)
**COLLINS, MAY, POTENZA, BARAN & GILLESPIE, P.C.**
201 North Central Avenue, 22nd Floor
Phoenix, Arizona 85004-0608
Telephone: (602) 252-1900
Facsimile: (602) 252-1114
Email: dcollins@cmpbglaw.com
Email: amedina@cmpbglaw.com

Attorneys for Debtor-in-Possession,
Texas Hill Enterprises, GP and Texas
Hill Diamante Cooling, L.L.C.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>TEXAS HILL ENTERPRISES, GP, an Arizona general partnership,<br><br>Debtor.<br><br>In re:<br><br>TEXAS HILL DIAMANTE COOLING, L.L.C an Arizona limited liability company<br><br>Debtor | Chapter 11<br><br>Case No. 0:10-bk-11121-JMM<br>Case No. 0:10-bk-11126-JMM<br><br>(Motion for Joint Administration Pending)<br><br>**INTERIM ORDER APPROVING DEBTORS USE OF CASH COLLATERAL** |

This Matter having been brought before the Court on the Motion to Approve the Debtors Use of Cash Collateral ("Motion"), filed by Texas Hill Enterprises, GP and Texas Hill Diamante Cooling, L.L.C. (collectively "Texas Hill"), as Debtors-in-Possession; this Court finding that notice of the Motion was proper and adequate; and good cause appearing therefore,

IT IS HEREBY ORDERED

**EXHIBIT D**

1. The Motion is approved on an interim basis;

2. The Debtors are authorized to use its cash so long as it carefully accounts for its sources and uses of such cash;

3. The Debtors shall provide a copy of this Order to all creditors listed on the master mailing list;

4. If no party-in-interest files a written objection to the terms and conditions of this Order with the Bankruptcy Court by _____, this Order shall become final; and

5. If a timely objection to this Order is filed, the objection shall be heard at the Court on _____.

**DATED AND SIGNED ABOVE**